**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| **SOCIAL POSITIONING INPUT SYSTEMS, LLC,** | § § § | |
| **Plaintiff,** | § | **Case No.: 3:21-cv-11630-FLW-ZNQ** |
| **vs.** | § § § | |
| | § | **PATENT CASE** |
| **RAPIDSOFT SYSTEMS, INC. d/b/a FIELD FORCE TRACKER,** | § § § | |
| **Defendant.** | § § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)6**

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     SUMMARY OF THE ARGUEMENT .................................................................1

III.    LEGAL STANDARD............................................................................................3

        A.      Rule 12(b)(6) Motions ............................................................... 3

        B.      Patent Eligibility Under 35 U.S.C. § 101 ........................... 10

IV.     ARGUEMENT .....................................................................................................15

        A.      Defendant's Overgeneralization of an "Abstract Idea" Ignores Virtually Every Element and Limitation of the Claim at Issue................................................ 8

        B.      The Claims ARE Directed to an Improvement in Computer and Communications Technology ............................................... 10

        C.      Alice/Mayo Step Two: The "'365 Patent Claims Recite the Inventive Concept of Using a Single User Interface to Communicate with Multiple Devices Using Device-Specific Protocol Instructions.......................................... 13

V.      RECENT CASE LAW DICTATES THAT THIS CASE SHOULD NOT BE DISMISSED PURSUANT TO RULE 12(b)(6) ...............................................17

VI.     CONCLUSION....................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Aatrix Software, Inc. v Green Shades Software, Inc.*,
    Appeal No. 2017-1452 (Fed. Cir. 2018) ....................................................15, 16

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 2347, 134 S.Ct. 2347 (2014) ............................................*1-7, 10, 11-17*

*Bancorp Services v. Sun Life Assur. Co. of Canada*,
    687 F.3d 1266 (Fed.Cir. 2012)....................................................................4

*Bascom Global Internet v. AT&T Mobility LLC*,
    No. 2015-1763 (Fed. Cir. June 27, 2016) ........................................ 13

*Berkheimer v. HP Inc.*,
    Appeal No. 2017 (Fed. Cir. 2018) ..................................................15

*Card Verification Solutions, LLC v. Citigroup Inc.*,
    2014 U.S. Dist. WL 4922524 (N.D. Ill. Sept. 29, 2014) ....................................3

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019).................................................. 2, 16-17

*Christopher v. Harbury*,
    536 U.S. 403, 122 S.Ct. 2179 (2002) .................................................3

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
    776 F.3d 1343 (Fed. Cir. 2014)....................................................13

*Data Distrib. Techs., LLC v. BRER Affiliates, Inc.*,
    Civ. No. 12-4878, slip op. at 16-17 (D.N.J. Aug. 19, 2014)...........................4

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    954 F.Supp.2d 509 (E.D. Tex. 2013).................................................5

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed Cir. 2014)....................................................5,6

*Diamond v. Chakrabarty*,
    447 U.S. 303, 100 S.Ct. 2204 (1980)..............................................4

*Diamond v. Diehr*,
    450 U.S. 175, 189 n.12, 101 S.Ct. 1048 (1981)..................................12

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)...............................................................*2, 6, 11-13*

*Erickson v. Pardus*,
   551 U.S. 89, 127 S.Ct. 2197 (2007)........................................................3

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016)...............................................................11

*Internet Patents*,
   790 F.3d at 1346 ...................................................................................10

*Kost v. Kozakiewicz*,
   1 F.3d 176 (3d Cir. 1993).......................................................................3

*Mayo Collaborative Serv. v. Prometheus Labs., Inc.*,
   566 U.S. 66, 132 S.Ct. 1289 (2012).......................................................5,6, 13

*McDermott v. Clondalkin Grp.*,
   2016 WL 2893844, at *3 (3d Cir. May 18, 2016) ..................................3

*McRO*,
   837 F.3d at 1314 ...................................................................................11

*McZeal v. Sprint Nextel Corp.*,
   501 F.3d 1354 (Fed. Cir. 2007)..............................................................3

*Oshiver v. Levin, Fishbein, Sedran & Berman*,
   38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994) .............................................3

*Phillips v. County of Allegheny*,
   515 F. 3d 224 (3rd Cir. 2008) ................................................................3

*Recognicorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017)..............................................................14

*Rockstar Consort. US LP, Inc. v. Samsung Elects. Co., Ltd.*,
   2014 WL 1998053 (E.D. Tex. May 15, 2014).........................................4

*Tellabs, Inc. v. Makar Issues & Rights, Ltd.*,
   551 U.S. 308, 127 S.Ct. 2499  (2007)....................................................3

*The California Inst. of Tech. v. Hughes Comm., Inc.*,
   2014 U.S. Dist. WL 5661290 at *5 n. 6 (C.D. Cal. Nov. 3, 2014) ........3

*Ultramercial, Inc. v. Hulu, LLC*,
    722 F.3d at 1338-39 (Fed. Cir 2013) ...............................................................3

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)...........................................................................16

*Wildtangent, Inc. v. Ultramercial, LLC*,
    573 U.S. 2870, 134 S.Ct. 2870 (2014)...............................................................3

## STATUTES & AUTHORITIES

35 U.S.C. §101 ............................................................................. *2-8, 11-12, 15-17*

 Fed. R. Civ. P 12(b)(6),.......................................................................................3

Now comes Plaintiff, Social Position Input Systems, LLC ("Plaintiff," "Counterclaim Defendant," and/or "SPIS"), by and through undersigned counsel, and responds to Defendant Rapidsoft Systems, Inc's ("Defendant," and/or "Rapidsoft") Notice of Motion and Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6) [Docs. 14 and 14-1] (hereafter the "Motion") as follows:

## I.
## INTRODUCTION

Defendant's Motion is based on an oversimplified and misleading characterization of the '365 Patent claims. Defendant ignores most of the recited elements and limitations in both its step-one and step-two analyses under the *Alice* decision. The ignored elements and limitations illustrate how the claimed invention is directed to an improvement in computer technology overcoming specific problems with the prior art. The elements and limitations of the '365 Patent claims, when taken as a whole, illustrate specialized, non-generic hardware and software components that are configured in a specialized manner and function beyond the basic operation of servers and computer processors. For at least these reasons, and as further detailed below, Defendant's Motion should be denied.

## II.
## SUMMARY OF THE ARGUMENT

Defendant's analysis of the '365 Patent is both misleading and flawed. Defendant's entire argument in connection with the first *Alice* step is based on an oversimplified and artificially constructed "abstract idea," which ignores key elements of the '365 Patent claims. Defendant's proposed "abstract idea" is "sharing address information." Defendant then identifies computer components in the claims and asserts that the components are "generic" or perform nothing more than routine functionality. Defendant's assertions, however, mischaracterize the '365 Patent invention and ignore claim elements and limitations that dictate the tasks performed by the

computer components, and which show that the components do not function in a generic manner.

The '365 Patent discloses and claims non-abstract and inventive concepts, which comprise improvements in computer and communications technology existing at the time of filing of the provisional application for the '365 Patent on April 28, 2006.  The claims are directed to systems and methods for remotely entering, storing and sharing location addresses for a positional information device.  '365 Patent, Abstract. The invention recited in the claims allows a user to easily and safely enter an address into a GPS device by giving that address to a remote communications link and to have that link automatically program the user's GPS device for usage. *Id*. The invention further allows the user to use the stored address on multiple GPS devices without having to manually enter the address. *Id*. The specification of the '365 Patent illustrates that each of these aspects represents a solution to a computer problem that existed at the time of the invention.

Even if it could be argued that the '365 Patent claims are directed to an abstract idea under the first *Alice* step, then, under the second *Alice* step, the claims recite elements and limitations that advance the abstract idea to patent eligible subject matter. Defendants again ignore these elements. The claims of the '365 Patent recite tangible components. The invention recited therein overcomes a problem specifically arising in the realm of computer networks. Unlike *Alice*, it neither involves a building block of ingenuity, nor does it seek to monopolize a fundamental financial or business idea. It also does not merely recite functionality that could be performed by human hand. The recited invention also improves an existing technological process. Further, a determination of whether recited components operate in a generic or non-generic manner is a fact question that should be resolved before a decision is made concerning validity under Section 101. Plaintiff herein alleges that the character of the claimed invention of the '365 Patent is non-generic and that must be taken as true. See, e.g., *Cellspin Soft, Inc. v. Fitbit, Inc*., 927 F.3d 1306, 1317-18 (Fed. Cir. 2019). In short, just as in *DDR Holdings* and *Enfish*, all of the factors of the *Alice* decision, and the analysis under Section 101, point to the patent eligibility of the '365 Patent claims.

### III.
### LEGAL STANDARD

**A.      Rule 12(b)(6) Motions**

Regional circuit law applies to motions to dismiss for the failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007). A motion filed under Rule 12(b)(6) tests the sufficiency of a complaint's factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). Under *Twombly* and *Iqbal*, the complaint must sufficiently show that the pleader has a plausible claim. *McDermott v. Clondalkin Grp.*, 2016 WL 2893844, at *3 (3d Cir. May 18, 2016). As part of the analysis, a court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. See, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). In this regard, a court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makar Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994).

It is "rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter… because every issued patent is presumed to have been issued properly, absent clear and convincing evidence to the contrary." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1338-39 (Fed. Cir. 2013) (vacated on other grounds by sub nom. *Wildtangent, Inc. v. Ultramercial, LLC*, 573 U.S. 2870, 134 S. Ct. 2870 (2014)); *Card Verification Solutions, LLC v. Citigroup Inc.*, 2014 U.S. Dist. WL 4922524 at *2 (N.D. Ill. Sept. 29, 2014).

Although ineligibility under §101 is a question of law, it is "rife with underlying factual issues." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d at 1338-39 (Fed. Cir. 2013); *The California Inst. of Tech. v. Hughes Comm., Inc.*, 2014 U.S. Dist. WL 5661290 at *5 n. 6 (C.D. Cal. Nov. 3, 2014).  And, "it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a §101 analysis, for the determination of patent eligibility requires a full

understanding of the basic character of the claimed subject matter." *Bancorp Services v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012).  A dismissal under §101 is therefore only appropriate "when the only plausible reading of the patent is that there is clear and convincing evidence of ineligibility." *Calif. Inst. of Tech.*, 2014 U.S. Dist. WL 5661290 at *5 n. 6 (citing *Ultramercial,* 722 F.3d at 1339); also *Data Distrib. Techs., LLC v. BRER Affiliates, Inc.*, Civ. No. 12-4878, slip op. at 16-17 (D.N.J. Aug. 19, 2014); *Rockstar Consort. US LP, Inc. v. Samsung Elects. Co., Ltd.*, 2014 WL 1998053 at *3 (E.D. Tex. May 15, 2014).

**B.     Patent Eligibility Under 35 U.S.C. § 101**

35 U.S.C. § 101 provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  Section 101 sets forth four independent categories of inventions or discoveries that are eligible for patent protection: processes, machines, manufactures, and compositions of matter. Although acknowledging that "[i]n choosing such expansive terms . . . Congress plainly contemplated that the patent laws would be given wide scope," the Supreme Court has identified three exceptions to Section 101: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308-09 (1980).  The basis for these exceptions is that patenting basic tools of scientific and technological work, which the Supreme Court referred to as the building blocks of ingenuity, would tend to impede innovation rather than to promote it. *Id*.

However, all inventions in effect embody, use, or apply laws of nature, natural phenomena, or abstract ideas so an invention is not patent-ineligible merely because it involves an abstract concept.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 2347, 134 S. Ct. 2347, 2354 (2014). Although patenting a building block of ingenuity would risk disproportionately tying up the use of the underlying ideas, integrating the building blocks into something more "pose[s] no comparable risk of pre-emption, and therefore remain eligible for the monopoly granted under our patent laws." *Id*.  at 2354-55.

"Congress took this permissive approach to patent eligibility to ensure that 'ingenuity

should receive a liberal encouragement.'" *Id.* (citing 447 U.S. at 308-309, 100 S. Ct. 2204); see *DDR Holdings, LLC v. Hotels.com, L.P.*, 954 F.Supp.2d 509, 524-525 (E.D. Tex. 2013).  Also, it is well-known that issued patent claims carry a statutory presumption of validity.  *DDR Holdings*, 954 F.Supp.2d, at 525. And, that presumption applies when §101 is raised as a basis for challenging validity in district court proceedings. *Id.*

In this regard, the Supreme Court has stated that "the concern that drives this exclusionary principle [is] one of pre-emption." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (citation omitted).  However, the Supreme Court in *Alice* warned that courts must "tread carefully in construing this exclusionary principal [of patent eligibility] lest it swallow all of patent law." *Alice*, 134 S. Ct. at 2354 (citation omitted).

*Alice* presents a two-step test for determining patent eligibility.  The first step "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." *Alice Corp.*, 134 S. Ct. at 2355. If the Court finds that the patent is not directed to a patent ineligible concept, i.e., the patented invention is not an abstract idea, then the analysis ends there and the motion to dismiss under §101 must be denied. If, however, the Court finds that the patented invention is directed to a patent ineligible concept, then the Court turns to the second step and "examine[s] the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice Corp.*, 134 S. Ct. at 2357 (citing *Mayo Collaborative Serv. v. Prometheus Labs., Inc.*, 566 U.S. 66, 132 S. Ct. 1289, 1294, 1298 (2012); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 155 (Fed Cir. 2014). Under the second step, even if an invention recites an abstract idea, the invention is patentable if it has additional features to ensure that the claim is more than drafted to monopolize an abstract idea. *Id.*

When considering the inventive concept of claim limitations, the limitations are considered both individually and as an ordered combination. *Id.* at 2355. Here, a court looks at "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.*

(citing *Mayo*, 566 U.S. at 78-79). *Alice* called this second step the "search for an 'inventive concept' - i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id*. (citing *Mayo*, 566 U.S. at 72-73).

In *DDR Holdings*, the Federal Circuit addressed whether claims directed to "systems and methods of generating a composite web page that combines certain visual elements of a 'host' website with content of a third-party merchant" were patentable. 773 F.3d at 1248.  After analyzing relevant precedent, the Court began the two-step analysis by finding that the asserted claims did not recite a mathematical algorithm, or a fundamental economic or longstanding business practice. *Id*., at 1257. Furthermore, the Court found that "[a]lthough the claims address a business challenge (retaining website visitors), it is a challenge particular to the Internet." *Id*. The Court held that the claims stood apart from prior cases because the claims were addressing a problem particular to computer technology:

> But these claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

*Id*. Inventions are therefore patentable under §101 if the claims do not attempt to preempt every application of an idea and instead recite a specific way of solving a computer-based problem. *Id*., at 1259. The Federal Circuit then held that the claims directed to the software implemented invention were patent eligible under Section 101. *Id*. The Federal Circuit has confirmed that under *Alice*, claims directed to software, in many instances, recite patent eligible subject matter. In *Enfish, LLC v. Microsoft Corp., 822 F.3d 1327 (Fed. Cir. 2016)*, the Federal Circuit analyzed the patent eligibility of claims directed to data stored in a table in what was called a "self-referential" model. The arrangement of data distinguished over tables adhering to a "relational" model. The Court noted that *Alice* could not be read:

> to broadly hold that all improvements in computer-related technology are

inherently abstract and, therefore, must be considered at step two [of Alice]. Indeed, some improvements in computer-related technology when appropriately claimed are undoubtedly not abstract, such as chip architecture, and LED display, and the like. ***Nor do we think that claims directed to software, as opposed to hardware, are inherently abstract and therefore only properly analyzed at the second set of the Alice analysis. Software can make non-abstract improvements to computer-related technology just as hardware improvements can.*** . . . Therefore, we find it relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea.

*Id*. at 11 (Emphasis added). The Court recognized that improvements to computer-related technology can encompass improvements to the functioning of a computer itself or improvements to an existing technological process. *Id*. at 10. The Court found that where the focus of claims is on an improvement to computer functionality, and not on economic or other tasks for which a computer is used in its ordinary capacity, the claims are not directed to an abstract idea within the meaning of *Alice*. *Id*. at 12. The Court also noted that the district court had erred in stripping down the claims to a bare concept. *Id*. at 14.

The district court concluded that the claims were directed to the abstract idea of "storing, organizing, and retrieving memory in a logical table" or, more simply, "the concept of organizing information using tabular formats. . . . However, ***describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule***.

*Id*. (Emphasis added). The claims were not directed to just any form of storing tabular data, but instead were specifically directed to a self-referential table for a computer database. *Id*. "In finding that the claims were directed simply to 'the concept of organizing information using tabular formats,' . . . the district court oversimplified the self-referential component of the claims and downplayed the invention's benefit." *Id*. at 15. Because the claims recited more than simply performing a well-established business practice or an abstract mathematical formula on a general purpose computer, they were determined to be non-abstract under Alice. *Id*. at 16-17. And, it did not matter that the invention was able to run on a general-purpose computer or that the improvement was not defined by reference to physical components. *Id*.

# IV.
# <u>ARGUMENT</u>

**A.    Defendant's Overgeneralization of an "Abstract Idea" Ignores Virtually Every Element and Limitation of the Claim at Issue**

Defendant's Motion should be denied because, when the facts are liberally construed in favor of Plaintiff, Defendant does not satisfy its high burden of proving patent ineligibility by clear and convincing evidence. The claimed invention is patent eligible under Section 101 because the claims of the '365 Patent do not recite an abstract idea. Defendant contends that the claims are directed to the abstract idea of "sharing address information."  Motion, at 1. Defendant's characterization is flawed for at least two reasons. It inserts language that does not exist in the '365 Patent claims. Admittedly, the asserted Claim 1 has the words "address" and "information."  It does not recite, however, "sharing address information."  More problematic is that Defendant's mischaracterization is a grossly oversimplified summary of the claims, which ignores key limitations and is purposely generated to fit Defendant's narrative.

In its entirety, Claim 1 recites:

1. A method for receiving location information at a positional information device, the method comprising:

sending a request from a requesting positional information device to a server *for at least one address stored in at least one sending positional information device*, the request *including a first identifier of the requesting positional information device*;

receiving at the requesting positional information device, from the server, a retrieved at least one address to the requesting positional information device wherein *the server determines a second identifier for identifying the at least one sending positional information device based on the received first identifier* and *retrieves the requested at least one address stored in the identified at least one sending positional information device*.

'365 Patent, Claim 1.

Defendant's "abstract idea" can be found, if at all, in a few instances of the words "address" and "information."  Defendant's mischaracterization and overgeneralization in crafting its "abstract idea" highlights Defendant's attempt to strip away key elements and/or ignore those

elements completely. Defendant ignores the recitations concerning the interaction of a requesting positional information device, a sending positional information device, a server, and information included in messages between these components.  These interactions and the information included in the messages are indicative of the fact that the elements and the software are operating in a non-generic manner that surpasses generic functionality of computer components.  Defendant ignores the recitation that the request made to the server includes a first identifier identifying the requesting positional information device.  Defendant ignores the recitation that the server, using the first identifier, determines a second identifier for identifying the sending positional information device and retrieves address information from the sending positional information device based on the second identifier.

Why does Defendant ignore these elements and craft an "abstract idea" the way it does? The reason is that if Defendant did not mischaracterize the claim, and took into account the entirety of the claim, it could not argue that the claim is directed to an abstract idea.  Each of the elements that Defendant ignores is representative of a computer component and/or a system operating in a non-generic manner. Generic servers and computers do not store addresses, request addresses from a server, send identifier information in a request message to a server, or determine a second identifier identifying a second (sending) component based on a first identifier received from, and identifying, a first (requesting) component.  The components, software, and functionality as recited must be configured in a way that goes beyond the generic functionality of servers and computers.

Moreover, the claims do not merely recite a mathematical algorithm, an economic practice, a pre-computer business practice, or a computer performing a non-essential function. And, the claims do not preempt any basic building block of technology. Rather, the claims are rooted in computer technology and improvements to a technological process and are patent eligible. As such, the claims of the '365 Patent are not directed to an abstract idea.

Defendant's strategy appears to be to identify hardware components within the claim and then simply conclude that the hardware components are generic, thereby lending no weight to the eligibility of the claim. Defendant then simply concludes, ***based only on the specification***, that

these components are generic. Motion, at 2. The problem with Defendant's analysis is that Defendant is ignoring virtually all of the key elements and limitations in the recited claims. For example, Defendant ignores every one of the above-highlighted elements and limitations of Claim 13. It is the very language that Defendant ignores, which illustrates that the claim is not directed to an abstract idea and recites a patent eligible improvement to computer technology.

Indeed, Defendant's brief acknowledges the shortcomings of the prior art. Motion, at 4. Defendant, however, concludes that the applicant does not provide any information on how the invention goes beyond the prior art. *Id.* Yet, the entirety of the specification of the '365 Patent, and its claims (including the ignored recitations discussed above) demonstrate exactly how the invention surpasses the prior art and solves the prior art problems noted by both the inventor and the Defendant.

This Court must consider the claims in their <u>entirety</u> to ascertain whether they are directed to ineligible subject matter under *Alice* step one. *See Internet Patents*, 790 F.3d at 1346. Removing language from the claims as inconvenient "excess verbiage" is not permitted and an improper method of performing step one. Moreover, the omitted claim language defines the solution to the then-existing computer and communications problem in existing computer and communications technology of communicating with multiple networked devices requiring specific protocol instructions for each device using multiple user interfaces. The specification of the '365 Patent clearly defines this problem and solution as shown above. Defendant improperly avoids the inconvenient purpose of the claims by intentionally omitting key language from the claims that define the solution.

**B.   The Claims ARE Directed to an Improvement in Computer and Communications Technology**

The '365 Patent is not directed merely to "sharing address information." The omitted claim language is clearly directed at solving the then-existing computer and communications problem and communicating with networked devices that require specific communication control protocols with a single user interface. The omitted language "focus[es] on a specific means or method,"

*McRO*, 837 F.3d at 1314, and "contains an inventive concept sufficient to transform' the [allegedly] claimed abstract idea into a patent-eligible application . . . ." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016) at 1316.  Defendant intentionally describes the claims at too high a level of abstraction "untethered from the language of the claims" to ensure that "the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337.

Defendant, of course, relies heavily on the *Alice* decision. *Alice*, however, did not deal directly with software or computer-related inventions and most certainly did not hold that software and/or computer related inventions could not present patent eligible subject matter. *Alice* concerned a scheme for mitigating settlement risk, i.e., the risk that only one party to an agreed-upon financial exchange will satisfy its obligation. The Court held that the claims directed to this scheme were not patentable subject matter under § 101 because they were drawn to the abstract idea of "intermediated settlements," and generic computer implementation, alone, did not transform the abstract idea into something patentable. *Alice*, 134 S. Ct. at 2350-51. The Court was also concerned with distinguishing patents that "claim the 'building[g] block[s]' of human ingenuity which are ineligible for patent protection, from those that integrate the building blocks into something more." *Id*. at 2350. The claims at issue are directed to improvements in computer technology and do not preempt building blocks of human ingenuity.

From the start of its argument, Defendant picks words from *Alice* such as "longstanding," "routine," and "conventional" and improperly projects those words onto the field of sharing address information.  Motion, at 7. Alice had nothing to do with sharing address information. Defendant then goes on to admittedly strip terminology from the claims by concluding, without any support, that such terminology is "generic." *Id*.

In *Enfish*, the Federal Circuit unambiguously recognized that software inventions may recite patent eligible subject matter if it improves computer functionality ***or an existing technological process***. *Enfish* at 11 (Emphasis added). The Federal Circuit found it "relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea, even at the first step of the Alice analysis." *Id*. If "the plain focus of

the claims is on an improvement to computer functionality itself, not on economic or other tasks for which a computer is used in its ordinary capacity", then the claim should be held to not be an abstract idea. *See Enfish*, 822 F.3d at 1332–33.

Defendant's generalization of the '365 Patent claims is exactly what the Federal Circuit and Supreme Court have warned against. "[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Enfish* at 14; see also, *Alice*, 134 S. Ct. at 2354 (noting that "we tread carefully in construing this exclusionary principle [of laws of nature, natural phenomena, and abstract ideas] lest it swallow all of patent law"); cf. *Diamond v. Diehr*, 450 U.S. 175, 189 n.12, 101 S. Ct. 1048 (1981) (cautioning that overgeneralizing claims, "if carried to its extreme, make[s] all inventions unpatentable because all inventions can be reduced to underlying principles of nature which, once known, make their implementation obvious").

The claims of the '365 Patent focus on improving computer and communications functionality with the ability of a user of a requesting positional information device to request an address of an asset location from a remote server, the request including a first identifier identifying the requesting positional information device.  The improvements further include having the server determine a second identifier, based on the first identifier, where the second identifier identifies a sending positional information device.  Thus, the requesting device and the sending device are linked together in the function of retrieving address information from a sending device, through a server, and to a requesting device. The '365 Patent improves computer and communications functionality, as well as the operation of asset tracking, by implementing the claimed computer components along with their recited operation.

The claims do not focus on economic or other tasks for which a computer is used in its ordinary capacity because the '365 Patent describes and claims an extraordinarily new computer and communications system that addresses the then-existing computer and communications problem in existing computer and communications technology.

The descriptions of the computer components and their operations, as provided throughout

the '365 Patent specification, track the language of the claims.  To be sure, the '365 Patent acknowledges that certain components can be provided by known hardware.  However, as the specification illustrates, the configuration and operation of those components is neither well-known nor generic. Given that the components, configuration, and operation recited in the claims is specialized and not generic, the '365 Patent claims do not recite an abstract idea, and certainly not the "abstract idea" alleged by Defendant.

Defendant argues that the claims of the '365 Patent are like those previously held invalid. Motion, at 11.  Again, Defendant ignores virtually all of the recitations of Claim 1 (for example) and cites cases that invalidated claims directed to "collecting information," "routing information," "transmitting information," and "transferring" information.  As discussed above, the omitted claim language goes beyond these key words and the Federal Circuit (as well as district courts) have recognized that software and computer inventions may still be valid within the scope of the *Alice* decision.   This is particularly true when the claim elements (as here) improve computer functionality and go beyond the generic functions of computer elements.  See, e.g., *Enfish*.

## C.    Alice*/Mayo* Step Two: The '365 Patent Claims Recite the Inventive Concept of Using a Single User Interface to Communicate with Multiple Devices Using Device-Specific Protocol Instructions

Even if the Court finds that the '365 Patent directed to an abstract idea, the claims provide an inventive concept in the application of the abstract idea such that the elements of each claim both individually and 'as an ordered combination' transform the nature of the claim into a patent-eligible application. See, e.g., *Bascom Global Internet v. AT&T Mobility LLC*, No. 2015-1763, 13-14 (Fed. Cir. 2016) ("The 'inventive concept' may arise in one or more of the individual claim limitations or in the ordered combination of the limitations.") (citing *Alice*, 134 S. Ct. at 2355).

In the second *Alice* step, the Court considers the elements of the claims to determine whether they transform the nature of the claim into a patent-eligible application of the abstract idea.  *See Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).  This is the search for an inventive concept, which is something sufficient to

ensure that the claim amounts to significantly more than the abstract idea itself. *See id.* "To save a patent at step two, an inventive concept must be evident in the claims." *Recognicorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

Defendant's *Alice* step-two analysis is nothing more than a repeat of its flawed step-one argument. Defendant zeros in on certain components and argues that those components are conventional or well-known, all while ignoring the very claim limitations that make it clear the components are configured, and operate, in a non-generic manner. For example, Defendant argues that "the claim limitations simply list generic hardware without any improvement in technology." Motion, at 13. First, this is not the test for step two of *Alice*. *Alice* concerns patent eligible subject matter, not inventiveness as Defendant's argument suggests. Second, Defendant's argument again ignores at least the following limitations, which are not generic hardware:

> sending a request from a requesting positional information device to a server ***for at least one address stored in at least one sending positional information device***, the request ***including a first identifier of the requesting positional information device***;

> receiving at the requesting positional information device, from the server, a retrieved at least one address to the requesting positional information device wherein ***the server determines a second identifier for identifying the at least one sending positional information device based on the received first identifier*** and ***retrieves the requested at least one address stored in the identified at least one sending positional information device***.

From '365 Patent, Claim 1.

Defendant argues that these are generic components. The hardware recited in Claim 1 includes a requesting positional information device, a sending positional information device, and a server. The positional information devices might include generic processors. Given their specialized configuration and their ability to send specialized messages, neither of these devices is generic. Even the server is not generic as it has been specifically programmed to determine a second identifier (for the sending device) based on a received first identifier (for the requesting device) in a request message from the requesting device. Defendant's arguments with respect to the dependent claims follow exactly the same pattern – ignore claim limitations and argue that

components are well-known.

Only specialized, non-generic hardware components and software are able to perform the steps recited in the claims of the '365 Patent. Defendant's description of the claimed invention (indeed, its entire argument regarding the inventive concept of the claims) intentionally omits the key claim language described above to fit its misleading narrative.  The inventive, and patent eligible, concept of the claims can be found in the language that Defendant omits from its analysis.

**V.**
**RECENT CASE LAW DICTATES THAT THIS CASE SHOULD NOT**
**BE DISMISSED PURSUANT TO RULE 12(B)(6)**

In *Berkheimer v. HP Inc.*, Appeal No. 2017-1437 (Fed. Cir. 2018), the Federal Circuit held that questions of fact underline patent eligibility determinations. The Court held that "[t]he second step of the *Alice* test is satisfied when the claim limitations involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." (quotations omitted). The Court elaborated:

> The question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact. Any fact, such as this one, that is pertinent to the invalidity conclusion must be proven by clear and convincing evidence. Like indefiniteness, enablement, or obviousness, whether a claim recites patent eligible subject matter is a question of law which may contain underlying facts.

*Id*. (citations omitted). The Federal Circuit determined that the district court had erred in concluding that there were no underlying factual questions concerning the Section 101 inquiry. *Id*. at 14. The Federal Circuit recognized that that questions relating to the second *Alice* step depend upon factual determinations.

> Whether a particular technology is well-understood, routine, and conventional goes beyond what was simply known in the prior art. The mere fact that something is disclosed in a piece of prior art, for example, does not mean it was well-understood, routine, and conventional.

*Id*. at 14.

Similarly, in *Aatrix Software, Inc. v. Green Shades Software, Inc.*, Appeal No. 2017-1452

(Fed. Cir. 2018), the Federal Circuit held that the district court erred in applying the Alice two-step validity test before the plaintiff had an opportunity to present allegations which would have materially affected the application of the *Alice* test.

> The district court erred to the extent it determined that claim 1 of the '615 patent is ineligible because it is not directed to a tangible embodiment. The district court granted this Rule 12(b)(6) motion without claim construction. We have some doubt about the propriety of doing so in this case but need not reach that issue because it did err when it denied leave to amend without claim construction and in the face of factual allegations, spelled out in the proposed second amended complaint, that, if accepted as true, establish that the claimed combination contains inventive components and improves the workings of the computer.

*Id*. at 6. *Aatrix* further held that "it remains true after *Alice Corp. Pty. v. CLS Bank International*, 134 S. Ct. 2347 (2014), that '[a] § 101 analysis begins by identifying whether an invention fits within one of the four statutorily provided categories of patent eligible subject matter.'" Id. (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713–14 (Fed. Cir. 2014)). In *Aatrix*, the Federal Circuit stated that Claim 1 of the '615 Patent met the requirement of patent eligibility:

> Like many claims that focus on software innovations, it is a system claim. It claims a data processing system which clearly requires a computer operating software, a means for viewing and changing data, and a means for viewing forms and reports. **This is very much a tangible system.**

*Id*. at 6-7 (emphasis added and footnote omitted).   And, as the Federal Circuit more recently determined in the *Cellspin* decision:

> In *Aatrix*, however, we repeatedly cited allegations in the complaint to conclude that the disputed claims were potentially inventive. See, e.g., 882 F.3d at 1128 ("There are concrete allegations in the second amended complaint that individual elements and the claimed combination are not well-understood, routine, or conventional activity."). While we do not read *Aatrix* to say that any allegation about inventiveness, wholly divorced from the claims or the specification, defeats a motion to dismiss, plausible and specific factual allegations that aspects of the claims are inventive are sufficient. *Id*. As long as what makes the claims inventive is recited by the claims, the specification need not expressly list all the reasons why this claimed structure is unconventional. In this case, Cellspin made specific, plausible factual allegations about why aspects of its claimed inventions were not conventional, e.g., its two-step, two-device structure requiring a connection before data is transmitted. The district court erred by not accepting those allegations as true.

*Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317-18 (Fed. Cir. 2019).

As in these decisions, Plaintiff here has alleged (both in the complaint, which incorporates the '365 Patent, and in this brief) that certain components recited in the claims are configured and operate in a non-generic manner and that the claims recite more than known concepts operating on generic computer devices. Given these recent decisions, Plaintiff respectfully submits that it is improper to dismiss this case based on Section 101 in the context of a Rule 12(b)(6) motion. In this case there are, at a minimum, underlying factual questions concerning whether the claimed elements and limitations constitute an inventive concept, alone or in combination with other elements, sufficient to survive a Section 101 challenge.

## VI.
## CONCLUSION

The claims of the '365 Patent are not directed to an abstract idea and cannot be properly boiled down to "sharing address information." Defendant has wholly failed in its heavy burden to present facts and arguments as to why this Court should adopt a bare conclusion that the '365 Patent claims are directed to this alleged, stripped-down concept. Even if the Court determines that claims are, in fact, directed to an abstract idea, the claims recite additional elements and limitations that transform that abstract idea into something patent eligible – and something that does not impinge on the free use of any fundamental building blocks of human ingenuity. The elements and limitations of the claims recite non-generic components and software directed to improvements in computer technology. Defendant's Motion ignores limitations of the very claim element at issue and, particularly with respect to the second *Alice* step, Defendant's arguments ignore the additional claim elements as a whole.  For at least the foregoing reasons, Defendant's Motion should be denied.  At a minimum, a decision regarding Section 101 should be postponed until issues of fact – whether the recited components and software are generic – can be established.

Dated: November 5, 2021                    Respectfully submitted,


                                           */s/Mark Kriegel*_____
                                           **MARK KRIEGEL**
                                           **LAW OFFICE OF MARK A. KRIEGEL, LLC**
                                           1479 Pennington Rd.
                                           Ewing, NJ 08618
                                           (609) 883-5133
                                           Fax: (609) 450-7237
                                           mkriegel@kriegellaw.com

                                           **ATTORNEYS FOR PLAINTIFF**

                                   **<u>CERTIFICATE OF SERVICE</u>**

    The undersigned hereby certifies that the foregoing document was filed electronically on
November 5, 2021, and was served via CM/ECF on all counsel who are deemed to have consented
to electronic service.

                                           */s/Mark Kriegel*_____
                                           **MARK KRIEGEL**