# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SOCIAL POSITIONING INPUT SYSTEMS, LLC, | § § § | |
| Plaintiff, | § | Case No: 3:21-CV-11630-FLW-TJB |
| vs. | § § § | |
| RAPIDSOFT SYSTEMS, INC. | § § § | |
| Defendant. | § § | |

## DEFENDANT RAPIDSOFT SYSTEMS INC.'S REPLY
## IN SUPPORT OF ITS MOTION TO DISMISS

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................1

II.  ARGUMENT................................................................................................................2

   A.   The Claims Of The '365 Patent Are Not Patent Eligible Under 35 U.S.C. § 101................2

      1.   The Claims Of The '365 Patent Are Drawn To An Abstract Idea....................................3

      2.   The Claims Of The '365 Patent Do Not Contain Additional Elements That Transform the Nature Of The Claim Into A Patent-Eligible Application. ................................................8

   B.   A Rule 12(b)(6) Motion Is Appropriate In This Matter.......................................................12

III. CONCLUSION .........................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018) ........................................................................14

*Alice Corp. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ........................................................................... 2, 3, 8, 9

*Apple, Inc. v. Ameranth, Inc.*,
    842 F.3d 1229, 1244 (Fed. Cir. 2016) ...............................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009) .................................................................................13

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349
    (Fed. Cir. 2016) ..................................................................................................9

*CardioNet, LLC v. InfoBionic, Inc.*,
    816 F. App'x 471 (Fed. Cir. 2020) ..................................................................7, 8

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019) ........................................................................14

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359, 1363–1364 (Fed. Cir. 2020) ......................................................4

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
    815 F. App'x 529, 538 (Fed. Cir. 2020) ............................................................14

*Electric Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ........................................................................11

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009) .............................................................................13

*Garmin USA, Inc. v. Cellspin Soft, Inc.*,
    140 S. Ct. 907, 205 L. Ed. 2d 459 (2020) ........................................................14

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012) ..................................................................................... passim

*Rothschild Digital Confirmation, LLC v. CompanyCam, Inc.*,
  494 F. Supp. 3d 263, 267 (D. Del. 2020) ............................................................1, 2

*Social Positioning Input Systems, LLC v. Agnik, LLC,*
  1-21-cv-00797 (D.Md.) .........................................................................................1

*Social Positioning Input Systems, LLC v. AngelSense, Inc.,*
  2-21-cv-08563 (D.N.J.) .........................................................................................1

*Social Positioning Input Systems, LLC v. CallPass, LLC,*
  8-21-cv-00274 (M.D.Fl.) .......................................................................................1

*Social Positioning Input Systems, LLC v. Midmark Corporation,*
  3-20-cv-00414 (S.D.Oh) ........................................................................................1

*The California Inst. of Tech. v. Hughes Comm., Inc.*,
  2014 U.S. Dist. WL 5661290 (C.D. Cal. Nov. 3, 2014) ......................................15

*Ultramercial, Inc. v. Hulu, LLC,*
  722 F.3d 1335 (Fed. Cir 2013) ............................................................................15

## **Statutes**

35 U.S.C. § 101 ............................................................................................. 1, 8, 9

## I. INTRODUCTION

Plaintiff is an established non-practicing entity, and its principal Leigh Rothschild (and sole inventor of the asserted patent) has a history of filing serial litigation, but then dismissing cases when met with resistance, before any decisions can be rendered on the merits. Since June 8, 2020, Plaintiff has filed fifty-five cases in eighteen different federal jurisdictions, all of which assert United States Patent No. 9,261,365 ("the '365 Patent"). Plaintiff agreed to dismiss cases with prejudice after a 35 U.S.C. § 101 motion was filed, but before such motion could be heard.[1]

Indeed, in a similar case concerning a patent by the same inventor, Leigh Rothschild, the court found the case exceptional, in part due to the plaintiff's "vexatious litigation." *Rothschild Digital Confirmation, LLC v. CompanyCam, Inc.*, 494 F. Supp. 3d 263, 267 (D. Del. 2020). In *Rothschild*, the plaintiff had filed eleven cases asserting infringement of a particular patent in the span of two years. *Id.* at 264. Defendant in that case, CompanyCam, moved to dismiss the case on patent ineligibility grounds, and the court stated it would grant the motion during the oral argument of the motion. *Id.* The plaintiff then dismissed the case before the court's

---

[1] *See, e.g.*, *Social Positioning Input Systems, LLC v. AngelSense, Inc.*, 2-21-cv-08563 (D.N.J.), *Social Positioning Input Systems, LLC v. Agnik, LLC*, 1-21-cv-00797 (D.Md.), *Social Positioning Input Systems, LLC v. CallPass, LLC*, 8-21-cv-00274 (M.D.Fl.), *Social Positioning Input Systems, LLC v. Midmark Corporation*, 3-20-cv-00414 (S.D.Oh).

order was entered and prolonged litigation against defendants in other cases. *Id.* at 268. The District of Delaware described the plaintiff's litigation conduct as "troubling" and deemed the case exceptional in view of the totality of circumstances and awarded attorneys' fees to the defendant. *Id.* at 267-269. The court was also concerned about the plaintiff's principal's conduct, noting that Mr. Rothschild had filed 820 lawsuits without reaching the merits in any of them. *Id.* at 266. Plaintiff has demonstrated similar litigation conduct here, and without an early look at the merits, they may continue their vexatious litigation without risking a decision on the merits.[2]

## II.   ARGUMENT

### A. The Claims Of The '365 Patent Are Not Patent Eligible Under 35 U.S.C. § 101

To determine whether a patent claims eligible subject matter, courts must follow the Supreme Court's familiar two-step framework. *See* Alice *Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70–73 (2012). The first step in the process requires determining whether the claims are directed to a law of nature, natural phenomenon, or abstract idea. *See* Alice, 573 U.S. at 217. If so, the second step requires determining whether the claims nonetheless include an "inventive concept"

---

[2] Plaintiff has filed six complaints since October 25, 2021.

sufficient to "'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 72, 78). To recite an "inventive concept" at step two, a patent must do more than recite an abstract idea "while adding the words 'apply it.'" *Id.* at 221 (quoting *Mayo*, 566 U.S. at 72). Moreover, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 566 U.S. at 82. Here, Plaintiff has failed to provide anything more than conclusory statements that ignored the detailed steps of Alice.

### 1. The Claims Of The '365 Patent Are Drawn To An Abstract Idea

The claims of the '365 Patent are drawn to an abstract idea, involving the requesting, filtering, sending, and receiving of address information. As noted in the specification of the '365 patent, "The present disclosure provides a device, system and method of remotely entering, storing, and sharing addresses …." '365 Patent, col. 2, lines 46-47. The first terms of the only two steps in claim 1 highlight this fact, requiring "sending a request" and "receiving … a retrieved at least one address." '365 Patent, claim 1.

Plaintiff provides absolutely no support for its conclusion that "[t]he components, software, and functionality as recited must be configured in a way that goes beyond the generic functionality of servers and computers." Dkt. 21, p. 9. Indeed, there is no indication in the claims or specification as to how such features

must be configured, and therefore, they merely disclose generic functionality. To qualify as "a patent-eligible improvement," the invention must be directed to a specific improvement in the computer's functionality, not simply to use the computer "as a tool" to implement an abstract idea. *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1363–1364 (Fed. Cir. 2020). Here, the invention falls into the latter category. It focuses on using a general-purpose computer to carry out the abstract ideas of sending, receiving, and filtering data. *See, e.g.,* '365 patent, 10:33-62, 11:7-28. No term in any claim of the '365 patent is directed to an improvement in the computer's functionality.

Here, Plaintiff first references "a requesting positional information device", and "a sending positional information device" and "a server". *See* Dkt. 21, p. 9. These are not special devices in any way. Rather, Plaintiff has described the "requesting positional information device" and "sending positional information device" so broadly so as to read on any mobile device or computer. *See* Amended Complaint, Dkt. 13, ¶ 14. Similarly, nothing in the claims or in Plaintiff's assertions indicate that the claimed server is anything other than a generic, general-purpose processor, rather than any improvement in computer technology.

Plaintiff also references "information included in messages between these components". *See* Dkt. 21, p. 9. In claim 1, the only information "included in messages between those components" appears to be a "first identifier". According

4

to claim 2, the term "first identifier" must be read broadly enough to at least include an "IP address". However, sending an IP address between components is not new or novel in any way. Since the internet began, an internet protocol (IP) address has been included in every single packet of information transmitted from one computer to another. It is well understood that an IP address is how the routers, servers, and other components that make up the backbone of the internet know which device sent a packet of information as well as which device is supposed to receive the packet.[3] This IP protocol (IPv4) was publicly introduced in 1981, well before the 2006 priority date of the '365 Patent.[4] Thus, even this "first identifier" fails to be anything but the known technique used by every device accessing the internet and thus is not directed to an improvement in the computer's functionality.

Plaintiff then attempts to focus on several supposed improvements to argue that the claims are not directed to an abstract idea[5], including (i) "the ability of a user

---

[3] *See, e.g.*, the Internet Corporation for Assigned Names and Numbers (ICANN) wiki page for IPv4, icannwiki.org/IPv4: ("An IPv4 header contains the following fields … Source address - The 32-bit IPv4 address of the sending host. Destination address - The 32-bit IPv4 address of the receiving host.").

[4] *See, e.g., id.* ("IPv4 was invented in the 1970s as the first major version of internet protocol. IPv4 allows numbers to map to physical devices and build a logical method for traffic to route from one number to another. Since its first introduction to the public in 1981, IPv4 became the foundation of the Internet and many other enterprise networks worldwide.").

[5] Rapidsoft believes that Social Positioning's arguments in this regard are more appropriately considered as part of the second step of *Alice* (indeed, Social Positioning made similar arguments when discussing the second step, *see* Dkt 21,

5

of a requesting positional information device to request an address of an asset location from a remote server, the request including a first identifier identifying the requesting positional information device" and (ii) "having the server determine a second identifier, based on the first identifier, where the second identifier identifies a sending positional information device." Dkt. 21, p. 12. With regards to the first supposed improvement, the claims do not mention a user, or an "asset" location. With respect to this supposed improvement, the claims only recite requesting an address stored on another device, where the request includes a first identifier. As discussed previously, the claim language for this alleged improvement can be summarized as a first generic processor requesting an address from a second generic processor using known techniques for communicating across the internet. This can only be determined as being drawn to an abstract idea.

With regards to the second supposed improvement, the specification does not define the term "second identifier". Dependent claim 6, however, defines the term as broadly as a mobile phone number or an IP address. The only discussion in the specification of a server determining anything akin to a second identifier is as follows:

> When utilizing the client application program, the user may be identified at the server by an identifier, e.g., an Internet cookie ….

---

pp. 14-15). However, as these aspects are argued as part of the first step, Rapidsoft will respond in a similar fashion.

> ***The remote server then utilizes a standard database lookup program, based on the received identifier, to find out information*** on the user's device including the transmission information for the device ***which may be the cellular telephone number of the device or a vehicle or the Internet address (e.g., the IP address) of the device or vehicle.***

'365 Patent, col. 10, lines 33-45 (emphasis added). Thus, the only support in the specification for the server's determination step indicates it uses "a standard database lookup program" to determine the second identifier.

The '365 Patent goes on to state that "[t]he server 304 then resolves the address into longitude or latitude coordinates using standard computer processing power and computer programs on the global computer network including but not limited to teraserver.microsoft.com, geocoder.us, yahoo.com, and maporama.com." *Id*. at col. 10, lines 46-50. Again, these are known implementations of techniques for standard functions, and the specification appears to imply that even the claimed server is not performing this last task – the resolution of addresses is being accomplished by a third party (*e.g.*, Microsoft, Geocoder, Yahoo, Maporama, etc.) server. Nothing here is novel or inventive. The use of standard techniques to perform a generic task (filtering / retrieving information) cannot be considered a technological improvement that would render the claim non-abstract.

Indeed, the claims here are drawn more towards an abstract idea than the claims in *CardioNet, LLC v. InfoBionic, Inc.*, 816 F. App'x 471 (Fed. Cir. 2020),

7

where the Federal Circuit held that claims to a system for "presenting information relating to heart data" were ineligible for a patent under § 101. *Id*. at 472. The relevant claims in that case recited a monitoring system and monitoring station that: (1) identified heartbeat anomalies, (2) cross-checked the results with a human operator, and (3) displayed the data. *Id*. Ultimately, the Federal Circuit held the claims were directed to the abstract concept of "collecting, analyzing, and displaying data" in order to perform the "longstanding practice" of "spot-checking systems for quality control." *Id*. at 475–77. Here, there are even less ties to anything other than generic computer usage – the claims in the '365 patent simply involve the sending, receiving, and filtering of data using generic processors in known ways. Thus, the claims in the '365 patent are drawn to an abstract idea, thereby satisfying step one of *Alice*.

> **2. The Claims Of The '365 Patent Do Not Contain Additional Elements That Transform the Nature Of The Claim Into A Patent-Eligible Application.**

Having met step one, courts must then "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 573 U.S. at 217, 134 S.Ct. 2347 (quoting *Mayo*, 566 U.S. at 77–78, 132 S.Ct. 1289). In computer-implemented inventions, to satisfy 35 U.S.C. § 101, the computer must perform more than "well-understood, routine, conventional

8

activities previously known to the industry." *Id.* at 223, 134 S.Ct. 2347 (quoting *Mayo*, 566 U.S. at 73, 132 S.Ct. 1289 (internal quotation marks and brackets omitted)). In addition, "[a]n inventive concept that transforms the abstract idea into a patent-eligible invention must be significantly more than the abstract idea itself, and cannot simply be an instruction to implement or apply the abstract idea on a computer." *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016) (citing *Alice*, 573 U.S. at 222–23, 134 S.Ct. 2347). In the present case, no additional element provides such a transformation to render the claims eligible for patenting under 35 U.S.C. § 101.

Plaintiff offers nothing to indicate how the computers do anything more than "well-understood, routine conventional activities previously known to the industry." Rather, Plaintiff merely makes conclusory statements that a device performing one step or another cannot possibly be generic and that "only specialized non-generic hardware is able to perform the steps recited in the claims …." *See, e.g.*, Dkt. 21, pp. 14-15. This lack of supporting evidence is not surprising – as noted above (*see supra*, § II.A), the specification itself clearly spells out that the method can be implemented on standard, generic hardware. Indeed, the only disclosure in the specification for the claimed steps discusses generic hardware and standard techniques.

Nothing in the claim language or in the specification describes the claimed pieces of hardware (a requesting positional information device, a sending positional information device, and a server) plausibly or reasonably as comprising anything other than generic hardware. When discussing the positional information devices, the relevant part of the specification only notes that

> The device will contain a computer processing module 120, e.g., a microprocessor. The computer processing module 120 will use computer software instructions that have been programmed into the module and conventional computer processing power to interact and organize the traffic flow between the various other modules.

'365 Patent, col. 4, lines 50-55. Nothing indicates anything other than generic hardware is required to implement the method. Further, the claimed server is only described as a "server residing on the Internet" (col. 4, line 42) or a "central server" (e.g., col. 8, line 26). Again, nothing plausibly or reasonably indicating the server is anything other than a generic processor. Thus, in clear opposition to Plaintiff's assertions, nothing in the specification indicates the hardware as anything other than generic.

Further, there is no special programming required, contrary to the assertions by Plaintiff. Given that "first identifier" must be interpreted at least broad enough to include an IP address (*see supra*, § II.A), this claim reads on any generic message that has been sent over the internet since at least 1981 when IPv4 was made publicly available. Thus, this "first identifier" does not require special programming.

10

Plaintiff's assertions regarding the generic servers are equally fraught with holes that can be seen by looking at the plain language of the specification. As noted above (*see supra*, § II.A), the only support for the server determining any "second identifier" explicitly states that "The remote server then utilizes a standard database lookup program" to do so. This is the epitome of generic programming – the specification explicitly states that any standard technique for looking up information will satisfy this requirement. Plaintiff has failed to provide any rational evidence that any of the claimed elements are anything but conventional.

Plaintiff alleges that Rapidsoft ignored claimed features, but there was simply nothing in the claims that was capable of satisfying the requirements for either the first or second step of *Alice*, and this is clear in any fair reading of the '365 patent.

Claims directed to the "process of gathering and analyzing information of a specified content, then displaying the results," without "any particular assertedly inventive technology for performing those functions," were held ineligible in *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). Similarly, claims directed to the "idea of generating a second menu from a first menu and sending the second menu to another location" were held patent-ineligible in *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229 (Fed. Cir. 2016) (noting, in part that "In addition to expressly reciting that the hardware needed was typical and that the programming steps were commonly known, the specification merely states that the

11

user interface could permit linking of orders with customers, with no disclosure of how this would be technologically implemented ….") Like these cases, the '365 claims only typical, standard hardware using commonly known or previously implemented programming steps.

Thus, step two of *Alice* clearly establishes that the claims of the '365 patent are not patent-eligible, as the claims in the '365 patent do nothing more than "simply append[] conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas", which as stated in *Mayo*, "cannot make those laws, phenomena, and ideas patentable." *Mayo*, 566 U.S. at 82.

### B. A Rule 12(b)(6) Motion Is Appropriate In This Matter

Plaintiff asserts that there is a question of fact that would prevent the Court from granting Rapidsoft's motion to dismiss. See Dkt. 21, p. 2. However, there are no plausible or reasonable factual allegations that would prevent the Court from granting the motion. Instead, as indicated above (*see supra*, §§ II.A.1, II.A.2), none of the cited "factual allegations" can be considered plausible or reasonable – they are either improper legal conclusions, clearly disputed by the specification, or are clearly unreasonable in light of how the internet is known to operate.

First, many of the "factual allegations" asserted by Plaintiff are simply conclusory statements. For example, Plaintiff states "Plaintiff herein alleges that the character of the claimed invention of the '365 Patent is non-generic and that must be

taken as true." Dkt. 21, p. 2.  However, while the Court must accept all factual allegations as true when considering a Motion to Dismiss under Rule 12(b)(6), this does not apply to any allegation made by Plaintiff.  For example, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard).  Here, it is clear Plaintiff's assertions are merely conclusory legal statements, rather than factual allegations that must be taken as true.

Second, Plaintiff incorrectly asserts that "the Federal Circuit held that the district court erred in applying the Alice two-step validity test before the plaintiff had an opportunity to present allegations which would have materially affected the application of the Alice test" and then quotes text from *Aatrix*. Dkt. 21, p. 16. However, in the very next sentence after the text quoted by Plaintiff, the Federal Circuit makes it explicitly clear that the error was in <u>*not*</u> applying the *Alice* test: "The district court erred in holding claim 1 ineligible because it was directed to intangible matter <u>and should have instead performed an *Alice*/*Mayo* analysis of claim 1</u>." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125–26 (Fed. Cir. 2018) (emphasis added).

13

Third, Plaintiff's implications and assertions regarding the holdings of the Federal Circuit in *Aatrix* and *Cellspin* are highly flawed. Both decisions explicitly state that any factual allegation must be plausible. "Indeed, we have explained that *plausible factual allegations* may preclude dismissing a case under § 101 …." *Aatrix*, 882 F.3d at 1125 (internal quotations removed) (emphasis added). As quoted in its 2020 *Dropbox* decision, the Federal Circuit in *Cellspin* required factual allegations to be plausible, stating "'any allegation about inventiveness, wholly divorced from the claims or the specification' does not defeat a motion to dismiss; only 'plausible and specific factual allegations that aspects of the claims are inventive are sufficient.'" *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (quoting *Cellspin*, 927 F.3d at 1317) (emphasis removed). "Cellspin made specific, plausible factual allegations about why aspects of its claimed inventions were not conventional, *e.g.*, its two-step, two-device structure requiring a connection *before* data is transmitted." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317–18 (Fed. Cir. 2019, *cert. denied sub nom. Garmin USA, Inc. v. Cellspin Soft, Inc.*, 140 S. Ct. 907, 205 L. Ed. 2d 459 (2020). Here, Plaintiff has not offered any plausible and specific factual evidence that aspects of the claim are inventive. The overwhelming factual evidence in the specification weighs against the patentability of the '365 patent. Nor has Plaintiff offered evidence of any other factual dispute - Plaintiff has not offered any claim

14

construction or any other question of fact that might be in dispute or need further briefing to analyze the § 101 issue. Thus, this matter is ripe for Rapidsoft's motion to dismiss to be granted.

Indeed, this is a case where "the only plausible reading of the patent is that there is clear and convincing evidence of ineligibility" and thus "dismissal under §101 is … appropriate." *The California Inst. of Tech. v. Hughes Comm., Inc.*, 2014 U.S. Dist. WL 5661290 at *5 n. 6 (C.D. Cal. Nov. 3, 2014) (quoting *Ultramercial, Inc. v. Hulu, LLC,* 722 F.3d 1335, 1338-39 (Fed. Cir 2013)).

## III. CONCLUSION

For the foregoing reasons as well as those reasons presented in Rapidsoft's opening brief, Rapidsoft's motion to dismiss should be granted.

Respectfully submitted,

Dated: November 17, 2021

By: /s/ Thomas F. Meagher
MEAGHER EMANUEL LAKS
GOLDBERG & LIAO, LLP
Thomas F. Meagher
tmeagher@meagheremanuel.com
Michael D. Loughnane
mloughnane@meagheremanuel.com
Alan Christopher Pattillo
cpattillo@meagheremanuel.com
One Palmer Square Suite 325
Princeton, NJ 08542
Tel: (609) 454-3500

Attorneys for Rapidsoft Systems Inc.